J. R. Swan, J.
The Stark County Bank, by her president and cashier, tendered to the auditor of Stark county, in May, a. d. 1854, the following return of the assets of the bank for taxation:
“ To the Auditor or Stark County, Ohio : The following is a statement of the average amount of notes and bills discounted or purchased by the Stark County Bank at *Canton, in said [46 county, including all the loans or discounts of said bank, during the year ending May, 1854, whether originally made or renewed during the year aforesaid, or at any time previous; whether made on bills of exchange, promissory notes, bonds, mortgages, or any other evidence of indebtedness (at their actual value in money); whether due previous to, during, or after the period aforesaid, and on which said bank has at any time reserved or received, or is entitled to receive, any profit or other consideration whatever, either in the shape of interest, discount, exchange, Or otherwise. And, also, of the average amount for the year aforesaid, ‘of all moneys, effects, or dues,’ which, for the period aforesaid, is $25,573.84, which, by law, the said bank is required ‘ at all times to have on hand,’ and whi'eh is not loaned, invested, used, or employed, with a view^ to profit. Parker Handy, President.
“ H. B. Huribut, Oashier.”
[Here follows, in the return, a statement of the assets referred to in the affidavit.]
The return by the bank of its assets for taxation was made out under the 19th and 20th sections of the act of April 13, 1852, (Swan’s Rev. Stat. 906); which provide as follows:
“ Sec. XIX. It shall be the duty of the president and cashier of every bank or banking company that shall have been, or may hereafter be, incorporated by the laws of this state, and having the right to issue bills for circulation as money, to. make out and return under oath, to the auditor of the county in which such bank or banking company may be situated, in the month of May, annually, a written statement containing:
“ 1. The average amount of notes and bills discounted, or pur *47, 48 chased, by such bank or banking company, which amounts shall in-47] elude all the loans or discounts of such *bank or banking company, whether originally made or renewed during the year aforesaid, or at any time previous; whether made on bills of exchange, notes, bonds, mortgages, or any other evidence of indebtedness (at their actual value in money), whether due previous to, during, or after the period aforesaid; and on which such bank or banking company has at any time reserved or received, or is entitled to receive, any profit, or other consideration, whatever, either in shape of interest, discount, exchange, or otherwise.
“ 2. The average amount of all other moneys, effects, or dues of every description, belonging to such bank or banking company, loaned, invested, or otherwise used or employed with a view to profit, or upon which such bank or banking company receives, or is entitled to receive, interest.
“ Seo. XX. To ascertain the amount of the notes and bills discounted and purchased, and all other moneys, effects, or dues, of every description, belonging to such bank or banking company, loaned, invested, or otherwise used or employed, with a view to profit, or upon which such bank or banking company receives, or is entitled to receive interest, to be returned as aforesaid, there shall be taken, as a criterion, the average amount of the aforesaid items for each month during the year next previous to the time of making such statement, if so long such bank or banking company shall have been engaged in business; and, if not, then during such time as such bank or banking company shall have been engaged in business, and the average shall be made by adding together the amount so found belonging to. such bank or banking company in each month so engaged in business, and dividing the same by the number of months so added together.”
The return of the bank is in the precise language of the statute. 48] By its positive affirmation it precludes any inference *t.hat anything required by the law to be returned had been omitted.
It is, however, claimed by the auditor of the county, acting under the instructions of the auditor of state : 1. That specie remaining in the vaults of the bank, and not held for sale or exchange, or otherwise employed for profit, should be returned for taxation; and, 2. That balances due from other banks, not on interest and unemployed with a view of profit, should also be returned for taxation.
If the legislature had intended to make the intrinsic value of the *49 .property of a bank tbe basis of taxation, they would simply have required the assessors to return the amount and the market value >of the stock. This would have represented, in general, the true value of the franchise and the property of the stockholders in the corporation. But it is obvious that the market value of the stock oi a bank is altogether disproportioned to the amount of business done. A bank that obtained interest or profit only on an amount equal to its capital stock, or the market value of its capital stock, would yield very meager profits to stockholders.
Besides, the most valuable franchise of a bank is its power to issue bank-bills, making its credit a substitution for coin, and thus enlarging its resources and means of profit. Hence the constitution and general assembly have rejected what a bank really owns, and taken, as the basis of taxation, what it employs.
This rule has probably originated in the artificial character of the effects of a bank,' from which it derives its profits, as distinguished from those of individuals.
A bank that borrows money upon which it pays interest, is competing with its customers, and engaged in operations quite foreign from the object of its organization. Legitimate banking is lending, and never borrowing, on interest. *A bank uses its [49 circulation, a safe margin of its current deposits and other artificial resources at a profit; but pays no interest on the means it employs. These means possess all the elements oí capital or money. In the ordinary course of business, therefore, there is this difference between a bank and an individual: while the former can use its own notes, its circulation and other credits as money, and at a profit without any deduction from, or charge upon, those profits on account of interest upon what it owes, an individual must, in general, pay interest on his own notes and on his borrowed capital.
Hence, if a bank were assessed for taxation, on the average amount of its resources employed at a profit, and without deduction, and an individual were assessed for taxation on the amount of his personal assets, whether employed at a profit or not, after deducting his debts upon which he paid interest, practically there would be so little inequality between the two, that both would, probably, insist that they bore too large a share of the burdens of the state.
But it is our province to simply interpret the legislative will. The law under consideration recognizes every operation of a bank *50 whereby it obtains or reserves a per cent., premium, or consideration, to be returned to the auditor of the county for taxation. Not what it owns, but what it employs at a profit. This is the substance of the statute, and so clearly expressed that no other interpretation can be given to it.
A bank keeps specie in its vaults for the purpose of redeeming its circulating bills. The circulation is used for profit, and is represented in loans and discounts and other financial operations, through which the circulation is taxed.
While the specie thus remains in the vault of the bank, and no consideration or profit is derived from its remaining there, we can 50] not perceive how it can be said that it is money *used or employed with a view to profit, any more than money laid away by a citizen, in his safe, for the purpose thereafter of paying debts, can be said to be employed while in the safe with a view to profit. We should have more readily apprehended the views of the defendant upon the construction of the 19th section of the tax law, if the statute had required a return of such moneys as were not used or employed with a view to profit.
But it is insisted that a bank should also make a return and be assessed upon all its banking property: that is, it should pay a tax on its personal property, like individuals, and then pay a tax on the same property when used or employed with a view to profit. It would require a very explicit and clear expression of legislative will to induce us to suppose that the general assembly intended to tax property invested in banking twice. The constitution of the state intended to provide that banks should p>ay, on such of their resources as were employed in banking, the same tax that individuals pay on their property. The 19th section of the tax law expresses more fully and clearly the same rule. Hence the statute says nothing about the amount of property owned by a bank, or the value of its stock. It looks to the use it makes of its property, and its daily operations, for the basis of taxation — a basis much larger, and demanding a greater tax, than a. mere property valuation.
Specie, therefore, in the vault of a bank, not used for sale or profit, or otherwise employed, is not required, by the statute, to be returned to the assessor. And for the same reason, balances due from other banks not on interest and unemployed, do not come within the provisions of the statute. Specie, however, kept for *51, 52 sale, and balances due from, or deposits made in other banks, which are on interest, are dues employed with a view to profit and are required to be assessed. So drafts upon balances or deposits not on interest, *sold or otherwise disposed of at a profit, come [51 within the provision of the law.
The return of the Stark County Bank is in accordance with the requirements of the law.
It is insisted», however, that, inasmuch as the statute authorizes the auditor of state to furnish general forms and instructions to the auditors of counties (Swan’s Rev. Stat. 75, sec. 19), and as the auditor of state has furnished a form which demands of banks a return of the specie in their vaults, etc., it is the duty of the banks to comply with this requisition of the form.
The forms furnished by the auditor of state, so far as they comply with the requirements of the statute, must undoubtedly be used. This is necessary to give uniformity to the returns of assessors, and to prevent confusion in the fiscal offices of the state. But if the auditor of state requires citizens or banks to make up statistical, financial, or other items of information, not required of them by law, it is clear that the auditor of state can not enforce the performance of such a burden by rejecting the return of a citizen or a bank duly made out according to law. Indeed, the statute specifically requires the forms and instructions of the auditor of state to be made out “ in conformity with the laws in force.”
A peremptory mandamus is granted.
Brinkerhoee, Bowen, and Scott, JJ., concurred.
Bartley, C. J., dissented.